Out of the Box Developers, LLC v. Logicbit Corp., 2012 NCBC 53.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 8327

OUT OF THE BOX DEVELOPERS, LLC,
d/b/a OTB CONSULTING,

        Plaintiff,

v.

LOGICBIT CORP., FRANCISCO A.
RIVERA, DOAN LAW LLP, and THE
DOAN LAW FIRM, LLP,

        Defendants.

**ORDER AND OPINION**

{1}     THIS MATTER is now before the court on the following motions: Plaintiff's Motion for Partial Summary Judgment ("Motion for Partial Summary Judgment"), Defendants' Motion to Dismiss ("Motion to Dismiss"), and Plaintiff's Motion to Strike Defendants' Motion to Dismiss ("Motion to Strike").

> *Ellis & Winters LLP by Jonathan D. Sasser, C. Scott Meyers, and Grant W. Garber for Plaintiff Out of the Box Developers, LLC, d/b/a OTB Consulting.*

> *Sands Anderson PC by David McKenzie, Jeffrey Hamilton Geiger, and Donna Ray Berkelhammer for Defendants LogicBit Corp., Francisco A. Rivera, Doan Law LLP, and The Doan Law Firm, LLP.*

Gale, Judge.

## I.   INTRODUCTION

{2}     Plaintiff Out of the Box Developers, LLC ("OTB") brought this action for monetary and injunctive relief alleging Defendants misappropriated trade secrets and breached a licensing agreement governing their use of BK*express,* which consists of OTB's proprietary customization of LexisNexis' Time Matters law

firm management software. OTB contends that Doan Law LLP ("Doan Law") and The Doan Law Firm LLP ("Doan Law Firm") (collectively the "Doan Defendants") conspired with LogicBit Corp. ("LogicBit") and its sole owner, Francisco A. Rivera ("Rivera"), to misappropriate OTB's customizations and integrate them into LogicBit's HoudiniEsq law firm management software. OTB seeks a partial summary judgment of liability against Doan Law. The Motion to Dismiss challenges the court's jurisdiction because Defendants claim: (1) OTB has no standing; and (2) OTB's claims are preempted by the federal Copyright Act. OTB attacks the Motion to Dismiss as an improper out-of-time summary judgment motion.

{3} Plaintiff's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part. Defendants' Motion to Dismiss is DENIED in part and GRANTED in part. Plaintiff's Motion to Strike is DENIED.

## II. PROCEDURAL HISTORY

{4} OTB filed its Complaint in Wake County Superior Court on May 14, 2010, its First Amended Complaint on July 2, 2010, and its Second Amended Complaint on July 6, 2011. The matter was designated as a mandatory complex business case by Order of Chief Justice Sarah Parker dated May 18, 2010, assigned to the Honorable Ben F. Tennille, and upon his retirement, reassigned to the undersigned.

{5} OTB asserts claims for misappropriation and misuse of trade secrets, unfair and deceptive trade practices, civil conspiracy, and permanent injunction against all Defendants; breach of contact against Doan Law; alter ego liability against Doan Law Firm; and tortious interference with contract against Doan Law Firm, LogicBit, and Rivera. Doan Law and Doan Law Firm filed their Answer & Counterclaim on September 15, 2011, asserting claims against OTB for trespass to chattel and computer trespass, civil conspiracy, unfair and deceptive trade practices, and abuse of process.

{6} The September 28, 2011 Case Management Order established a discovery deadline of February 1, 2012 and a dispositive motion deadline of March 1, 2012.

{7} OTB filed its Motion for Partial Summary Judgment on March 1, 2012. Defendants filed their Motion to Dismiss on March 30, 2012. OTB moved to strike the Motion to Dismiss on April 9, 2012.

{8} The motions have been fully briefed, the court heard oral argument, and the motions are ripe for adjudication.

## III. STATEMENT OF FACTS

{9} The court does not make findings of fact in connection with motions to dismiss, as such motions do "not present the merits, but only [determine] whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). The court likewise does not make findings of fact when ruling upon a motion for summary judgment. The court here summarizes the facts documented by the record to provide context for its ruling. *See Hyde Ins. Agency v. Dixie Leasing Corp.*, 26 N.C. App. 138, 215 S.E.2d 162 (1975).

{10} OTB is a North Carolina limited liability company with a principal place of business in Cary, Wake County, North Carolina. (2nd Am. Compl. ¶ 4.)

{11} LogicBit is a Delaware corporation with a principal place of business in Cary, Wake County, North Carolina. Rivera is a resident of Cary, Wake County, North Carolina and is LogicBit's founder, sole owner, and Chief Executive Officer. (2nd Am. Compl. ¶¶ 5–6.)

{12} Doan Law is a California limited liability partnership that owns, manages, and controls a consumer bankruptcy law firm with offices in various locations throughout California. Doan Law Firm is alleged to be a California limited liability partnership with multiple California offices. (2nd Am. Compl. ¶¶ 7–9.)

{13}    OTB owns BK*express*, which is a system of customizations to another software product called "Time Matters," which is owned, copyrighted, and sold by LexisNexis as law firm practice management software. (Aff. of Thomas L. Rowe, Esq. ¶ 4, March 1, 2012.) LexisNexis does not customize Time Matters for use in any particular practice area, but recommends Certified Independent Consultants ("CICs") such as OTB, to provide law practice-specific customizations. OTB's Managing Director, Tom Rowe ("Rowe"), created BK*express* to customize the Time Matters software for use by consumer bankruptcy practitioners. (Aff. of Thomas L. Rowe, Esq. ¶¶ 4–5, March 1, 2012.) The product is distributed in three versions, depending on a firm's size and desired customizations. Stated generally, OTB's customization process involves an OTB representative's onsite injection of elements of "program data" into the "program tables" on the Time Matters system. (Aff. of Thomas L. Rowe, Esq. ¶¶ 8–9, May 21, 2010.) OTB claims the program data is protected intellectual property. Defendants contend that the program data is merely a labeling system utilizing common phrases such as "Debtor," "Chapter 7," and "Judge."

{14}    OTB's authority to customize Time Matters is governed by a master agreement between LexisNexis and OTB. LexisNexis licenses Time Matters to its users pursuant to an End User License Agreement ("EULA"). OTB's license for BK*express* is also with the end user, and LexisNexis is not a party to that license.

{15}    In 2007, James Doan ("Mr. Doan") attended a conference where he observed a demonstration of BK*express*. (Dep. of James Doan, Esq. vol. 1, 24–27.) Doan Law was then using Time Matters pursuant its LexisNexis EULA. Mr. Doan later requested that OTB expedite an installation of BK*express*. (Aff. of Thomas L. Rowe, Esq. Ex. 1, March 1, 2012.) Rowe oversaw the installation on Doan Law's computers and the training of Doan Law's staff beginning in September 2008. (Aff. of Thomas L. Rowe, Esq. ¶ 7, March 1, 2012.)

{16}    On September 30, 2008, OTB and Doan Law executed a standard OTB licensing agreement (the "Licensing Agreement," attached to Pl.'s Mot. for Partial Summ. J. as Ex. 4 to Aff. of Thomas L. Rowe, Esq., March 1, 2012.) The Licensing

Agreement provides that BK*express* "is the confidential and proprietary property of OTB." (Licensing Agreement, Schedule 1 ¶ 5.)

{17}   In January 2010, as the Licensing Agreement's initial term was nearing its end, Doan Law asked OTB to reduce its annual BK*express* licensing fee from $995 to $200 per user per year. (Pl.'s SJ Supp. Br. 4.) OTB declined and Mr. Doan began searching for an alternative to BK*express*. (Dep. of James Doan, Esq. vol. 2, 250–51.) Mr. Doan identified HoudiniEsq, LogicBit's law firm management system which at the time had not been customized for use by consumer bankruptcy practitioners.

{18}   Sometime in January or February 2010, Doan Law installed the HoudiniEsq platform. OTB alleges that in the transition process, Doan Law improperly transferred to LogicBit and Rivera a back-up copy (the ".bak File") of their Time Matters software with all of OTB's BK*express* customizations, and that this file was then used to develop a customized version of HoudiniEsq to compete with BK*express*. (Dep. of James Doan, Esq. vol. 1, 104–05.) Defendants admit the copy was made but contend it was authorized and proper.

{19}   Doan Law, LogicBit, and Rivera worked to replicate BK*express*'s functionality into the HoudiniEsq program. (Dep. of Francisco A. Rivera, vol. 1, 17:11–15; 18:22–19:2; 42:21–43:2.) Mr. Doan admits that he used BK*express* to customize HoudiniEsq to perform the same functions, often having BK*express* open in front of him "to make sure that [he] was capturing every piece of data [he] had in the [Time Matters/BK*express*] system." (Dep. of James Doan, Esq. vol. 2, 271:18–272:21.)

{20}   On March 22, 2010, Doan Law informed OTB that the Licensing Agreement would expire by its terms on April 23, 2010. (Aff. of Thomas L. Rowe, Esq. ¶ 13, March 1, 2010.) On April 21, 2010, Rowe contacted Doan Law to schedule the removal of BK*express* from Doan Law's system (Aff. of Thomas L. Rowe, Esq. Ex. 6, March 1, 2012) after the Parties were unable to reach an agreement to extend the Licensing Agreement on a prorated fee basis. (Aff. of James Doan ¶¶ 9, 16, April 18, 2012.) Doan Law's IT provider, Roy Allen ("Allen")

migrated Doan Law's data from the Time Matters database into the HoudiniEsq platform on Friday, April 30, 2010 and Saturday, May 1, 2010. (Aff. of James Doan ¶ 7, April 18, 2012.) Defendants allege that Rowe had earlier illegally accessed the Doan Law Time Matters database and acquired a copy of the Structured Language Script ("SQL") Defendants were using to transport data, and threatened to lock Doan Law out of their client database. (Defs.' Br. in Opp'n to Pl.'s Mot. for Partial Summ. J. 8 [hereinafter "Defs.' SJ Opp'n Br."].)

{21}    Doan Law suggested that OTB could uninstall the BK*express* customizations on or after May 3, 2010. (Aff. of James Doan ¶ 11, April 12, 2012; Aff. of Thomas L. Rowe, Esq. Ex. 9, March 1, 2012.) Rowe indicates that he was prepared to remove the BK*express* customizations on May 5, 2010, but was unable to do so because Doan Law did not provide him with the information necessary to remotely access Doan Law's computer system. (Aff. of Thomas L. Rowe, Esq. ¶¶ 18−19, March 1, 2012.) To date, OTB has not been allowed to uninstall BK*express* from Doan Law's system. Mr. Doan indicates that Doan Law has, however, not used BK*express* or Time Matters since the data migration to HoudiniEsq. (Dep. of James Doan, Esq. vol. 1, 52−54.)

## IV.  ANALYSIS

{22}    OTB claims that the undisputed evidence establishes that Doan Law breached the Licensing Agreement by: (1) refusing to allow OTB to remove the BK*express* customizations from Doan Law's computer system when the Licensing Agreement expired; (2) transferring the .bak File to LogicBit and Rivera without OTB's prior written consent; and (3) reverse engineering BK*express* to customize HoudiniEsq for the purpose of competing with OTB. Defendants assert the court has no jurisdiction over these claims because: (1) OTB has no standing because its license improperly limits rights Doan Law was given by its LexisNexis EULA; and (2) OTB's claims are preempted by the Copyright Act. The court must first determine whether the Motion to Dismiss is timely because it properly raises

jurisdictional challenges, and if so, then resolve its disputed jurisdiction before addressing OTB's Motion for Partial Summary Judgment.

A. Defendants' Motion to Dismiss and Plaintiff's Motion to Strike

1. Defendants' Motion to Dismiss was timely filed

{23}     Standing may be properly challenged on a motion to dismiss pursuant to Rule 12(b)(1).  Standing "refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter."  *Morris v. Thomas*, 161 N.C. App. 684, 684, 589 S.E.2d 419, 422 (2003) (citing *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55, 57 (2002), *disc. review denied*, 357 N.C. 61, 579 S.E.2d 283 (2003)). It is "a necessary prerequisite to a court's proper exercise of subject matter jurisdiction" and is to be resolved as a question of law for the court.  *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878–79, *disc. review denied*, 356 N.C. 610, 574 S.E.2d 474 (2002); *see Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 165, 552 S.E.2d 220, 225 (2001), *review denied*, 356 N.C. 161, 568 S.E.2d 191 (2002).  "[P]laintiffs have the burden of proving that standing exists," (*Am. Woodland Indus., Inc.*, 155 N.C. App. at 627, 574 S.E.2d at 57), but when considering a motion to dismiss for lack of standing, North Carolina courts "view the allegations as true and the supporting record in the light most favorable to the non-moving party."  *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008).  Because standing is considered an aspect of subject matter jurisdiction, "the court is not restricted to the face of the pleadings in making its determination."  *Transcon. Gas Pipe Line Corp. v. Calco Enters.*, 132 N.C. App. 237, 241, 511 S.E.2d 671, 675 (1999).

{24}     An objection to subject matter jurisdiction may be made at any time during the progress of the case.  *Turner v. Hatchett*, 104 N.C. App. 487, 488, 409 S.E.2d 747, 748 (1991) (citations omitted).  Whether to grant a movant's request to

strike a pleading is within the court's discretion. *See Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 25, 588 S.E.2d 20, 25 (2003).

{25}   The court finds that the Motion to Dismiss raises legitimate jurisdictional issues and is not time-barred. Therefore, OTB's Motion to Strike is DENIED.

2.  OTB has standing to assert breaches of its Licensing Agreement

{26}   To have standing, a plaintiff must demonstrate injury in fact, causation, and the likelihood that the injury will be redressed by a favorable decision. *Lee Ray Bergman Real Estate Rentals v. N.C. Fair Hous. Ctr.*, 153 N.C. App. 176, 179, 568 S.E.2d 883, 886 (2002). OTB initially satisfies these requirements by alleging that: (1) OTB and Doan Law are parties to the Licensing Agreement; (2) Doan Law breached the Licensing Agreement; and (3) OTB was injured by the breach. (2nd Am. Compl. ¶¶ 34, 120–24.) Defendants challenge OTB's standing because it's based on provisions which are prohibited by OTB's agreements with LexisNexis or Doan Law's EULA with LexisNexis. Defendants have the burden of proving their challenge.

{27}   OTB has two agreements with LexisNexis — a "Certified Independent Consultant Agreement" and a "Solution Provider Agreement (Distributor)," which provide in pertinent part:

> [U]nder no circumstances may [OTB] grant licenses to use [Time Matters] . . . on terms and conditions other than those set forth in the end user license agreements accompanying, embedded within [Time Matters] or otherwise displayed prior to allowing the customer to download, install, or use [Time Matters] (collectively, the "EULA").

(Defs.' Br. in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction Ex. A, B, D [hereinafter "Defs.' MTD Supp. Br."].)

{28}   The court has had some difficulty in identifying the inconsistencies that the Defendants claim defeat OTB's standing. After first carefully studying the briefs, the court pressed Defendants' counsel at oral argument to identify specific contractual provisions in the Licensing Agreement which are inconsistent with the

terms of OTB's LexisNexis agreements or Doan Law's EULA. As to the latter, Defendants' counsel responded that "[i]t's not necessarily what's in the EULA" and "[i]t's not really about the EULA." (Oral Arg. Hr'g Tr. 45:2–3, July 17, 2012.) Although the court does not believe Defendants' position has been fully clarified, the court construes their argument to be that OTB asserts an ownership interest in and restricts the transfer of Doan Law's client data even though the data is not and cannot be owned by OTB, and that any such assertion violates provisions in Doan Law's EULA which "does not restrict the end user from migrating a client database" and "does not restrict being able to use client data with the so-called program data." (Oral Arg. Hr'g Tr. 46:12–15; 47:6–8; 47:20–25.)

{29}   This argument is grounded in Paragraph 2 of the OTB Licensing Agreement, which provides that:

> [o]wnership and other proprietary rights for materials produced by or for OTB pursuant to this Agreement shall become and remain the property of OTB. "Material" includes, but is not limited to, program configuration and customization, writings, pictorial reproductions, drawings or other graphical representations, data, documentation, software developments, specifications, calculations, tables, reports and documents. Notwithstanding the foregoing provisions in this Agreement, and upon fulfillment of [Doan Law's] obligations under this Agreement, OTB hereby grants to [Doan Law] a non-exclusive, perpetual, and royalty-free license to the Materials developed under this Agreement (this does not include the BK*express*™, which is subject to the Subscription License Agreement).

(Licensing Agreement ¶ 2.) This paragraph reserves to OTB only rights in "materials produced by or for OTB." The provision does not, at least on its face, assert OTB's ownership of Doan Law client data. Defendants assert, however, that in practical effect, OTB claims rights in and restricts Doan Law from its own data because its client data cannot be read intelligibly without use of the BK*express* labels. They then claim that the OTB Licensing Agreement is inconsistent with the EULA which reserves rights in its own data to Doan Law.

{30}   The court is not persuaded by Defendants' interpretation. The court reads the Licensing Agreement to provide that OTB maintains ownership only of its

own customizations, and does not prevent Doan Law from migrating its own client data to another software platform. The problem Doan Law faced was that it wanted to migrate its data to a platform that did not at the time have the capability of displaying the data in a format usable for Doan Law's purposes. OTB's License Agreement is not inconsistent with the LexisNexis agreements in insisting that OTB's customizations not be used by a competitor to create the ability to display the customer data with similar functionality. Whether or not Defendants violated the Licensing Agreement is a separate issue, but OTB has standing to assert its claim.

{31} Defendants assert further that Doan Law's inability to use its data without OTB's customization implicates both public policy and unspecified antitrust laws which defeat OTB's standing. Defendants argue that in practical effect, the OTB Licensing Agreement becomes a contract of adhesion which tethers Doan Law to OTB because the client information is useless without the software customizations. (Oral Arg. Hr'g Tr. 51:13−56:10.) Defendants refer to the deposition testimony of OTB's expert John Cleve that certain user data injected into BK*express* by Doan Law would be "unintelligible" without the corresponding label or program data. (Dep. of John P. Cleve 114−15.) The court believes the record does not support Defendants' argument.

{32} The Licensing Agreement provides that the Doan Law "data will remain in a way that [Doan Law] can access and view it, although the specialized fields, techniques, shortcuts, templates, etc., will no longer be available[.]" (Licensing Agreement, Schedule 1 ¶ 8(ii).) The Licensing Agreement further authorizes Doan Law to either:

> a) make one copy of the System solely for backup or archival purposes, provided that you reproduce all copyright and other proprietary notices that are on the original copy of the System; or b) transfer the System to one single hard disk on a stand-alone computer or the network server computer or shared drive on a network, provided that you keep the original media solely for backup or archival purposes. No other copies are allowed or authorized.

(Licensing Agreement ¶ 5.)

The court finds no basis to void this provision of the Licensing Agreement on public policy grounds.

{33}   Defendants appear to argue further that OTB cannot enforce its Licensing Agreement against Doan Law because OTB has breached its own agreements with LexisNexis.  After extensive review, the court has been unable to isolate specific provisions of the contracts between LexisNexis and OTB that the record suggests OTB may have breached.  Even assuming such a breach, the court cannot discern a cogent basis on which Defendants have the right as third-party beneficiaries to assert any such breach.  To assert rights as a third-party beneficiary, a party must show that a contract "was executed for the direct, and not incidental benefit of the third party."  *Babb v. Bynum & Murphrey*, PLLC, 182 N.C. App. 750, 753–54, 643 S.E.2d 55, 58–59 (2007).  "A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person" and "[w]hen a third person seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement."  *Id.*  Defendants do no more than to point out that OTB's contracts with LexisNexis refer generally to the term "end user" at least 31 times.  (Defs.' Reply Br. in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction 13 [hereinafter "Defs.' MTD Reply Br."].)  This is not an adequate basis to assert standing as a third-party beneficiary.

{34}   In sum, Defendants have not successfully demonstrated that OTB lacks standing to assert violations of its Licensing Agreement.  To the extent that the Motion to Dismiss rests on this ground, it is DENIED.

3.  Two of OTB's claims are not preempted by the Copyright Act

{35}   Defendants assert that all claims OTB asserts fall within the scope of the federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*, so that OTB's exclusive claim is for copyright infringement.  (Defs.' MTD Supp. Br. 15–16.)  Defendants' essential argument is that OTB's claims are no more than variations on an assertion that Defendants created or transferred an unauthorized derivative work.

{36}   Section 301(a) of the Copyright Act provides:

[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by [the Copyright Act].

17 U.S.C. § 301(a) (2006).

{37}   In pertinent part, Section 106 grants exclusive rights "(1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 106 (1)–(3).

{38}   There is significant federal case law addressing preemption of state law claims by the Copyright Act.  The case law is not always consistent, either between circuits or within the same circuit.  *See generally,* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B](1)[a] (2012).  Stated as a broad general rule, a state law cause of action is preempted by the Copyright Act if: (1) the cause of action falls within the subject matter of copyright law; and (2) the rights protected by state law are equivalent to any of the exclusive rights granted by the Copyright Act.  *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993).  Preemption does not depend on whether the owner has actually secured a registered copyright, although such a registration may be a predicate to filing a copyright infringement action.  *See Innovative Med. Prods., Inc. v. Felmet*, 472 F. Supp. 2d 678, 683 (M.D.N.C. 2006).  Here, BK*express* falls within the subject matter of copyright law as an original work of authorship fixed in a tangible medium, *see* 17 U.S.C. § 102.  The determinative issue is then whether the state law claims OTB asserts are equivalent to the "exclusive" rights granted under the Copyright Act.  *See Rosciszewski*, 1 F.3d at 229.  In *Rosciszewski*, the Fourth Circuit articulated an "extra element" test, stated as follows:

In order to ascertain whether a specific state cause of action involves a
right equivalent to one of those identified in § 106, reference must be
made to the elements of the state cause of action.  State-law claims
that infringe one of the exclusive rights contained in § 106 are
preempted by § 301(a) if the right defined by state law "may be
abridged by an act which, in and of itself, would infringe one of the
exclusive rights."  However, "if an 'extra element' is 'required instead of
or in addition to the acts of reproduction, performance, distribution or
display, in order to constitute a state-created cause of action, . . . there
is no preemption,'" provided that "the 'extra element' changes the
'nature of the action so that it is *qualitatively* different from a
copyright infringement claim[.]'"

*Rosciszewski*, 1 F.3d at 229–30 (internal citations omitted) (emphasis in original).

{39}    A North Carolina federal district court followed this test to determine
that North Carolina causes of action for trade secret misappropriation and unfair
and deceptive trade practices based on such misappropriation are not preempted by
the Copyright Act.  *Forest2Market, Inc. v. Am. Forest Mgmt., Inc.*, No. 3:05-cv-423,
2008 U.S. Dist. LEXIS 33185 (W.D.N.C. Apr. 21, 2008).

{40}    As to breach of contract claims, the various federal circuits do not
follow a uniform approach in determining whether the contractual promise required
to prove a breach of contract is itself an "extra element" adequate to defeat
preemption by the Copyright Act and there is no bright line test as to contract
claims in the Fourth Circuit.  Some circuits have held that the existence of a
contractual promise in and of itself constitutes an extra element sufficient to avoid
preemption.  *See* 1 Nimmer, *supra*; *ProCD, Inc. v. Zeidenburg*. 86 F.3d 1447, 1454
(7th Cir. 1996); *Taquino v. Teledyne Monarch Runner*, 893 F.2d 1488, 1501 (5th Cir.
1990).  Some decisions within the Fourth Circuit found that the asserted breach of
contract claims was preempted.  *See The Nichols Agency, Inc. v. Enchanted Child
Care, Inc.*, 537 F. Supp. 2d 774 (D. Md. 2008); *Madison Rover Mgt. Co. v. Bus. Mgt.
Software Corp.*, 351 F. Supp. 2d 436, 443–44 (M.D.N.C. 2005); *Brown v. McCormick*,
23 F. Supp. 2d 594, 608 (D. Md. 1998); *Wharton v. Columbia Pictures Indus., Inc.*,
907 F. Supp. 144, 146 (D. Md. 1995).  It is clear, however, that some breach of
contract claims are not preempted.  *See Acorn Structures, Inc. v. Swantz*, 846 F.2d

923, 926 (4th Cir. 1988). A Maryland district court explains that the Fourth Circuit standard allows a state law breach of contract action to survive preemption only when the breach rests on contract provisions addressing matters falling outside the subject matter of copyright. *The Nichols Agency, Inc*, 537 F. Supp. 2d at 783 (citing *Acorn Structures, Inc.*, 846 F.2d at 926). Another Maryland federal district court stated that "the state law right 'is equivalent to one of the rights comprised by a copyright if it is infringed by the mere act of reproduction, performance, distribution or display.'" *Fischer v. Viacom Int'l, Inc.*, 115 F.Supp. 2d 535, 541 (D. Md. 2000) (citations omitted).

{41} There is no clear precedent by a North Carolina appellate court defining the test to be applied to determine preemption of a state law breach of contract cause of action by the Copyright Act. However, the North Carolina Court of Appeals addressed a comparable issue involving preemption of a breach of contract claim by the federal patent laws. There the court stated the principle that "where a contract in no way expands upon the obligations created by the patent law, the proper jurisdiction for suit on that contract is the federal courts." *Tart v. Walker*, 38 N.C. App. 500, 504, 248 S.E.2d 736, 738 (1978). The contract action in *Tart* was preempted because, "the contract imposes no obligations other than those created by the patent law itself." *Id.* at 503, 248 S.E.2d at 738. *Tart's* logic is the same that underlies the Fourth Circuit's "extra element" test.[1] It legitimizes that test being applied in this case.

{42} The elements of a copyright infringement claim are: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). OTB's misappropriation of trade secrets claim further requires proof of a valid trade secret and a breach of trust or confidence. *See* N.C. Gen. Stat. § 66-152.

---

[1] Preemption can also arise where a party attempts to "back door" the Copyright Act by seeking to enforce a contract provision that purports to restrict a right that the Copyright Act allows. *See Pacific Gas & Elec. Co. v. Energy Res. Conservation and Dev. Comm'n,* 461 U.S. 190 (1983). That is, however, not the situation presented by this case.

OTB's unfair and deceptive trade practices claim further requires an unfair or deceptive act, which may be misappropriating a trade secret. *See Med. Staffing Network, Inc. v. Ridgeway*, 194 N.C. App. 649, 659, 670 S.E.2d 321, 329 (2009). OTB's tortious interference with contract claim further requires proof that the Defendants acted without justification and intentionally induced another not to perform a valid contractual obligation. *McMahon & Assocs., LLC v. Future Serenity, Inc.*, No. COA09-1580, 2010 N.C. App. LEXIS 1683, at *5 (2010). OTB's civil conspiracy claim further requires proof of an agreement to do an unlawful act, or to do a lawful act in an unlawful way. *Elec. World, Inc. v. Barefoot*, 153 N.C. App. 387, 394, 570 S.E.2d 225, 230 (2002). The rights to be protected by these claims are then not preempted because they require proof beyond the elements required to establish copyright infringement.

{43} OTB's breach of contract claims based on Defendants' alleged copying raise more difficult preemption issues because they more closely resemble a claim for copyright infringement. OTB asserts that Doan Law breached three provisions of the Licensing Agreement because: (1) it refused to allow OTB to remove the BK*express* customizations when the Licensing Agreement expired; (2) it gave LogicBit and/or Rivera an unauthorized copy of the BK*express* customizations; and (3) it improperly reverse engineered BK*express*. Each of these claims arises from Schedule 1 of the Licensing Agreement which provides:

> 3. *Limitations*. The System and Documentation (and all copies thereof) are licensed, not sold, and title to the System and Documentation and all copies thereof remains solely with OTB. The System may only be used by [Doan Law] to customize [Doan Law's] specific Lexis Software installation that is used in [Doan Law's] own business and not for any Improper Use. In this Agreement "Improper Use" means: . . . (v) any effort to reverse engineer, decompile, disassemble, or otherwise discover the operation of the System for the purpose of either competing with OTB, creating derivative works from the System, or creating software with similar functionality.
>
> . . . .
>
> 6. *Ownership; Transfers and Other Restrictions*. [Doan Law] may not sell, rent, lease, lend, contract host (such as in an application

service or hosing provider), or transfer any copy of the System, without the express prior written consent of OTB.  You may not allow any other parties to provide the System to you under contract or application hosting, or other contract service, except by OTB, or an application or hosting provider that is an authorized distributor certified by OTB.

. . . .

8.      *Term; End of Subscription License; General* . . . (ii) At the end of the subscription license period [Doan Law] shall cease all use of the System and shall permit OTB to access [Doan Law's] installation of the Lexis Software to remove all BK*express* functionality[.]

(Licensing Agreement, Schedule 1 ¶¶ 3, 6, 8.)

{44}     The first breach claim does not raise preemption issues because removing customizations at the end of the license term does not fall within the subject matter of the Copyright Act.  However, the second and third breach claims involve copying and fall within the scope of Section 106 of the Copyright Act.  OTB claims, however, that the rights asserted are not equivalent to a copyright claim because OTB must prove an extra element.  As for its reverse engineering claim, OTB argues that the extra element is that the BK*express* customizations were reverse engineered "for the purpose of competing with OTB."  *See Lowry's Reports v. Legg Mason, Inc.*, 186 F. Supp. 2d 592, 594–95 (D. Md. 2002) (finding breach of contract claim qualitatively different from copyright infringement claim where the contract at issue "essentially established a private law governing fair use of the copyrighted works *inter partes*").  As to its claim of providing an unauthorized copy of the .bak File, OTB claims that it must prove an actual transfer to LogicBit and there is no preemption because "there is no transferring right in the bundle of rights under the Copyright Act." (Oral Arg. Hr'g Tr. 75:5–24.)  Although Section 106(3) provides the copyright holder the exclusive right to distribute copies "to the public by sale or other transfer of ownership, or by rental, lease, or lending," OTB construes this section very narrowly to include only "distribution for profit or to change ownership."  (Oral Arg. Hr'g Tr. 75:6–7.)

{45}     The federal courts have struggled with whether the Copyright Act authorizes a certain amount of "reverse engineering," particularly in the context of

computer software sold pursuant to shrinkwrap licenses. *See generally* 4 Nimmer, *supra*, at §13.05[D](4). Professor Nimmer suggests that case law may be read to insulate reverse engineering if it is solely for the purpose of unlocking and transferring non-copyrighted data. *Id.*; *Compare Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1520–28 (9th Cir. 1992) (allowing "intermediate copying" to obtain data while not incorporating copyrighted material into a competitive product) *and Davidson & Assoc. v. Jung*, 422 F.3d 630 (8th Cir. 2005) (upholding breach of contract claim for copying of licensed software against assertion of preemption and fair use). It is difficult to draw any clear line of demarcation from these cases, but it appears that the purpose and extent of the copying which is claimed to constitute "reverse engineering" may control preemption. There is a distinction on the one hand in copying solely to unlock non-copyrighted data embedded in copyrighted software tables, and on the other hand actually copying copyrighted material into a competitive product.

{46}  As discussed more fully below in the context of OTB's Motion for Partial Summary Judgment, the court is not able to discern uncontested facts in the present record which establish whether Defendants used the .bak File only to unlock Doan Law's client data or whether Defendants also further actually copied OTB's customizations into HoudiniEsq in order to compete with the Time Matters platform. Under the language of the Licensing Agreement, to prove its breach of contract claim for reverse engineering, OTB must prove more than just that Doan Law copied or decompiled BK*express*. It must further prove that it did so for purposes of competing with OTB. As such, the court concludes that the breach of Schedule 1 Paragraph 3 of the Licensing Agreement requires an extra element beyond the scope of the Copyright Act and that the asserted contract right is not the equivalent of the copyright protection and is thus not preempted. Defendants' Motion to Dismiss the claim for this breach of Schedule 1 Paragraph 3 of the Licensing Agreement for lack of subject matter jurisdiction is DENIED.

{47}  In contrast, the court concludes that OTB's asserted breach of Schedule 1 Paragraph 6 of the Licensing Agreement by furnishing a copy of the .bak

File is preempted because the act underlying the asserted breach would without further proof constitute copyright infringement. The claim is therefore preempted. Accordingly, Defendants' Motion to Dismiss OTB's claim for breach of Schedule 1, Paragraph 6 of the Licensing Agreement for lack of subject matter jurisdiction is GRANTED.

B. Plaintiff's Motion for Partial Summary Judgment

1. Standard of review

{48}     Pursuant to N.C. R. Civ. P. 56(c) ("Rule 56"), a party is entitled to summary judgment if the record shows "that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A, Rule 56(c) (2011). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact, which may be met by proving that an essential element of the opposing party's claim is nonexistent. *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002). If the movant successfully makes such a showing, the burden then shifts to the nonmovant to present specific facts establishing the presence of a genuine factual dispute for trial. *Lowe v. Bradford*, 305 N.C. 366, 369–70, 289 S.E.2d 363, 366 (1982).

{49}     To prevail on its breach of contract claims, OTB must establish for each claim that a valid contractual term was breached. *Poor v. Hill*, 138 N.C. App. 19, 27, 530 S.E.2d 838, 844 (2000). The two claims surviving preemption are the removal of customizations at the end of the License Term and reverse engineering for purposes of competing.

2. Doan Law breached the  Agreement by refusing to allow removal of BK*express*

{50}     Defendants do not dispute that OTB has not been allowed remove the BK*express* customizations from Doan Law's system. Defendants rather defend OTB's breach of contract claim by asserting that any breach was immaterial or that

allowing OTB to enforce its agreement would violate laws or public policy. While their arguments may later be effective in limiting any monetary damage OTB may be able to prove as a result of the breach, the uncontested evidence establishes that Doan Law has breached the Licensing Agreement by its refusal to allow the customizations to be removed.

{51} The uncontested facts include that the Doan Defendants wrote Rowe near the expiration of the OTB Licensing Agreement to request that the license be extended until May 15, 2010 on a prorated cost basis, but when no agreement for such an extension could be negotiated, the Licensing Agreement expired, after which Doan Law and its IT provider conducted the final mapping of Doan Law's client data on Friday, April 30, 2010 and Saturday, May 1, 2010. Defendants contend they were at this time "in the untenable position of choosing between losing its labels . . . and a minor delay in complying with a service contract." (Defs.' SJ Opp'n Br. 7–8.)

{52} Defendants' opposition brief includes a sweeping argument that OTB's claim is nevertheless barred by "obvious defenses, including but not limited to public policy, duress, frustration of purpose, failure to mitigate and waiver." (Defs.' SJ Opp'n Br. 8.) This broad assertion is not followed with any citation to authority. Defendants further contend that their refusal to allow OTB to remove its customizations was excused when OTB later filed suit and then entered an agreement in which Defendants promised they would not "alter, remove, or destroy any documents, files, programs, or other computer-related instrumentalities that are related to work that LogicBit or Rivera performed for Doan in 2010[.]" (Defs.' SJ Opp'n Br. 9.) Defendants assert that it "strains credulity to claim that Doan Law is in breach for failing to allow the removal of Plaintiff's customizations when, almost simultaneously, Plaintiff insists that its customizations remain undisturbed until the conclusion of this litigation." (Defs.' SJ Opp'n Br. 10.)

{53} The court is not persuaded that Defendants are insulated by defenses from their uncontested refusal to allow OTB to remove its customizations. Defendants' arguments go to the extent of damages OTB can prove as a result of the

breach, but they do not excuse the breach itself. Accordingly, OTB's Motion for Partial Summary Judgment for the breach of Schedule 1, Section 8(ii) of the Licensing Agreement is GRANTED.

     3.   There are material issues of fact regarding OTB's claim for reverse engineering

{54}    OTB contends that Defendants' own testimony supports granting OTB summary judgment on this claim. OTB points to Mr. Doan's deposition testimony that he used BK*express* to customize HoudiniEsq to perform the same functions, often having BK*express* open in front of him "to make sure that [he] was capturing every piece of data [he] had in the [Time Matters/BK*express*] system," (Dep. of James Doan, Esq. vol. 2, 271:18–272:21.), and to Rivera's testimony that "[i]f you look at somebody else's product while creating your own, you're reverse engineering[.]" (Dep. of Francisco A. Rivera vol. 2, 148.)

{55}    Defendants resist OTB's Motion with several arguments. They first claim that summary judgment would in any event be premature because OTB filed its Motion, without having first specified the trade secrets it claims Defendants misappropriated. However, the breach of contract claim does not depend upon or necessarily require proof of trade secret misappropriation.

{56}    Defendants further assert that there was no breach because they were authorized to provide LogicBit and Rivera a copy of the bak. File necessary to prepare the SQL script to transport Doan Law's own data which was practically inaccessible without the labels OTB claims as proprietary customizations. Defendants again clothe their argument in public policy, reciting Doan Law's professional duty to maintain and safeguard its client database. (Defs.' SJ Opp'n Br. 5.) They assert Doan Law and its IT provider were concerned about their ability to map and use Doan Law client data in the HoudiniEsq platform without the benefit of the labels or "program data" OTB used to display this client data and that they then created the .bak File and transferred the same to Rivera and LogicBit to guard against the possibility of a defective data transfer. (Defs.' SJ Opp'n Br. 5–7.)

{57} Defendants also contend that they were authorized to create the .bak File by Paragraph 2 of the Licensing Agreement which provides that "upon fulfillment of Client's obligations under this Agreement, OTB hereby grants to Client a non-exclusive, perpetual, and royalty-free license to the Materials developed under this Agreement (this does not include the BKexpress [mark], which is subject to the Subscription License Agreement)," and Schedule 1, Paragraph 5 of the Licensing Agreement which allows Doan Law to make one copy of the system solely for backup and archival purposes. OTB counters that Doan Law exceeded any right under the Licensing Agreement when it provided a copy to LogicBit and Rivera, and particularly so when the copy was then used to develop HoudiniEsq as a competitive product.

{58} In sum, Defendants admit that Doan Law provided the .bak File to LogicBit and Rivera and that they did so to assure that Doan Law lost no functionality in using its own client data when changing to the HoudiniEsq platform. The court is again not persuaded that any public policy argument excuses violating the Licensing Agreement. But the court cannot find such a violation has been proven by uncontested facts. More specifically, the court finds that the record does not clearly lead to a conclusion that Defendants actually incorporated OTB's protected customizations into HoudiniEsq, rather than only using the .bak File to assure that Doan Law's client data was unlocked. The undisputed evidence demonstrates some degree of reverse engineering, but the evidence is disputed whether that the reverse engineering was of such a degree as to constitute developing a competitive product.

{59} OTB's Motion for Partial Summary Judgment for violation of Schedule 1, Paragraph 3 of the Licensing Agreement is therefore DENIED.[2]

---

[2] While not directly on point, a review of Judge Posner's discussion in *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, may be instructive in framing issues left for trial. 350 F.3d 640 (7th Cir. 2003). There, he discussed issues that may arise where a licensor is confronted with losing access to its own data because of how it becomes imbedded in a computer program.

## IV. CONCLUSION

{60}    For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part, Defendants' Motion to Dismiss is DENIED in part and GRANTED in part, and Plaintiff's Motion to Strike is DENIED.

It is so ORDERED this 30th day of October, 2012.